T.C. Memo. 2008-236

UNITED STATES TAX COURT

WELLPOINT, INC., f.k.a. ANTHEM, INC., SUCCESSOR IN INTEREST TO
ANTHEM INSURANCE COMPANIES, INC., AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13585-05.               Filed October 27, 2008.

<u>Philip C. Cook</u>, <u>Michelle M. Henkel</u>, and <u>Nancy B. Pridgen</u>,
for petitioner.

<u>Ruth M. Spadaro</u>, <u>John M. Altman</u>, <u>Robin L. Herrell</u>, and
<u>Thomas M. Rath</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $49,075,740
deficiency in petitioner's Federal income tax for 1999 and a
$2,630,548 deficiency for 2000.  Petitioner is WellPoint, Inc. &

Subsidiaries, formerly known as Anthem, Inc. (Anthem), which was the successor to Anthem Insurance Companies, Inc., and Associated Insurance Companies, Inc. (both referred to as AICI). All of these entities will be referred to as the Blue Cross and Blue Shield Parent Company or petitioner.

We are asked to decide two issues. The first issue is whether petitioner may deduct under section 162(a)[1] three settlement payments totaling $113,837,500 that it made to resolve lawsuits brought against it by the attorneys general of Kentucky, Ohio, and Connecticut (collectively the lawsuits and individually the Kentucky litigation, the Ohio litigation, and the Connecticut litigation). The second issue is whether the legal and professional expenses that petitioner incurred to defend against these lawsuits are deductible.[2] The parties agree that both issues are governed by the "origin of the claim" doctrine. We hold that both the settlement payments and the legal and professional expenses are capital expenditures and therefore not deductible.

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]The parties have resolved all other issues in a stipulation of settled issues.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the accompanying exhibits, and the stipulation of settled issues are incorporated by this reference. Petitioner is a mutual insurance company organized under Indiana law.

Petitioner is in the business of providing commercial health insurance through its subsidiaries. Petitioner and its predecessors provided healthcare insurance coverage to members in exchange for premiums, paid claims, and invested reserves and surplus.

Many of petitioner's direct or indirect operating subsidiaries are licensees of the Blue Cross and Blue Shield Association.[3] Petitioner merged with the largest Kentucky, Ohio, and Connecticut Blue Cross and Blue Shield (BCBS) plans (the Settlement Subsidiaries) between 1993 and 1997.

The attorneys general of Kentucky, Ohio, and Connecticut began looking into the corporate and legal history of the Settlement Subsidiaries, ultimately deciding to bring lawsuits, primarily cy-pres or charitable trust actions, against AICI and

---

[3]The Blue Cross and Blue Shield Association, a trade association formed in 1982 from the merger of the Blue Cross Association and the Association of Blue Shield Plans, owns the Blue Cross and Blue Shield trade names and marks. Licensees of the Blue Cross and Blue Shield Association were required to be nonprofit organizations until 1994.

its subsidiaries.[4] Each attorney general separately claimed that the State's BCBS entity had a charitable purpose, had received beneficial treatment under State and Federal law because of that purpose, and held assets impressed with a charitable trust.[5] The attorneys general asserted that the entities' charitable purposes were no longer being met and that the charitable assets that had accumulated should be taken from petitioner's control and redirected to the same or similar charitable purposes.[6]

---

[4]There were multiple lawsuits and multiple claims, but the predominant claim in each State was the cy-pres claim.

[5]The Kentucky BCBS subsidiary was formed as a nonprofit organization with a charitable purpose. Its charter proscribed private pecuniary profit. The Ohio BCBS subsidiary's original Blue Cross predecessors were local hospital service associations that had formed during the Great Depression with the purpose of assisting individuals with payment of their medical expenses. The Connecticut BCBS subsidiary and/or its predecessors were formed as nonprofit organizations whose purpose was to promote social welfare. Their charters prohibited private inurement. They based charges to individuals for medical services on family income and received discounted physician services and public subsidies.

[6]Count I of the Kentucky litigation asserted a cy-pres claim, and counts II and III asserted unlawful conversion and unjust enrichment claims. The Ohio Attorney General asserted a cy-pres claim and alleged that Anthem had breached its fiduciary duty to hold and apply Blue Cross assets to their charitable purposes. The Connecticut Attorney General sought to protect charitable assets and property impressed with a charitable trust and alleged that Anthem breached fiduciary duties and made negligent representations. Petitioner repeatedly characterized the lawsuits as disputes over assets in their financial statements, their annual reports, and their statements to shareholders.

Petitioner made settlement payments totaling $113,837,500 in 1999 to resolve pending and potential claims in the Kentucky litigation, the Ohio litigation, and the Connecticut litigation. Petitioner agreed to pay $45 million to settle all claims in the Kentucky litigation, relinquished all possession and ownership of the funds, and transferred those funds to the Commonwealth of Kentucky to create a section 501(c)(3) organization that promoted Kentucky healthcare. Petitioner agreed to settle the Ohio litigation for $36 million, reflecting the value of the Blue Cross assets of the Ohio entity as of October 1, 1987, and that money was used to establish the Anthem Foundation.[7] Petitioner settled the Connecticut litigation for $40,836,500, which it paid to a newly formed charitable corporation to serve the health needs of the citizens of Connecticut.[8]

Petitioner filed returns for the taxable years ending December 31, 1999 and 2000, deducting the $113,837,500 settlement amount in 1999 and deducting $819,201 in 1999 and $8,394 in 2000 for legal and professional fees incurred

---

[7]Petitioner was given an $8 million credit for prior charitable contributions and, accordingly, was required to pay only $28 million of the $36 million settlement.

[8]Some of this litigation is described in Capital Blue Cross & Subs. v. Commissioner, 122 T.C. 224 (2004), revd. 431 F.3d 117 (3d Cir. 2005). That decision is neither binding on nor dispositive of this case.

in connection with the lawsuits.[9]  Respondent examined and disallowed the deductions for settlement payments and legal fees. Petitioner timely filed a petition.

## OPINION

We are asked to decide whether the settlement payments and legal fees are deductible as ordinary and necessary expenses as petitioner argues or whether, as respondent argues, petitioner must capitalize these expenses.[10]  The parties agree that the origin of the claim doctrine controls the outcome of this case.

I. Origin of the Claim Doctrine

Distinguishing between expenses that can be deducted under section 162 and those that must be capitalized under section 263 requires an examination of all the pertinent facts and events, and each case "'turns on its special facts'."  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 86 (1992) (quoting Deputy v. du Pont, 308 U.S. 488, 496 (1940)); Boagni v. Commissioner, 59 T.C. 708 (1973).

Whether expenses are deductible on the one hand, or subject to being capitalized on the other hand, may be determined by the origin of the claim test.  Woodward v. Commissioner, 397 U.S. 572 (1970); United States v. Gilmore, 372 U.S. 39 (1963).  Under this

---

[9]The parties already resolved their dispute about other legal and professional fees in the stipulation of settled issues.

[10]Respondent argues alternatively that the settlement payments and legal fees are neither capitalizable nor deductible. We need not reach that issue because of our holding.

test, the substance of the underlying claim or transaction out of which the expenditure in controversy arose governs whether the item is a deductible expense or a capital expenditure, regardless of the motives of the payor making the payment or the consequences that may result from the failure to defeat the claim. See Woodward v. Commissioner, supra at 578; Newark Morning Ledger Co. v. United States, 539 F.2d 929, 935 (3d Cir. 1976); Clark Oil & Ref. Corp. v. United States, 473 F.2d 1217, 1220 (7th Cir. 1973); Anchor Coupling Co. v. United States, 427 F.2d 429, 433 (7th Cir. 1970). The origin of the claim test does not involve a "mechanical search for the first in the chain of events," but requires consideration of the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which the amounts claimed as deductions were expended, and all other facts relating to the litigation. Boagni v. Commissioner, supra at 713.

A. Character of the Claim–Settlement Payments

The predominant claim in each of the lawsuits was the cy-pres claim. "Cy-pres" is defined as "a rule for the construction of instruments in equity, by which the intention of the party is carried out as near as may be, when it would be impossible or illegal to give it literal effect." Black's Law Dictionary 387 (6th ed. 1990). Under the cy-pres doctrine, if property has been dedicated in trust for a particular "charitable purpose" and that

purpose is not being carried out, a State attorney general is authorized to initiate a cy-pres proceeding to carry out the charitable purpose in a way that is "as near as" possible to the original purpose.  4A Scott & Fratcher, The Law of Trusts, secs. 399, 399.2, at 476-484, 489-517 (4th ed. 1989).

B. Deductibility of Cy-Pres Claim Litigation

We now focus on whether the payments made by petitioner for litigation and settlement of the claims under the cy-pres doctrine are deductible ordinary and necessary expenses under section 162 or expenses that must be capitalized under section 263.  The costs incurred in litigating title to property are capital expenditures.  Sec. 1.263(a)-2(c), Income Tax Regs. Defending or perfecting title to property encompasses not only disputes over legal title but also disputes over beneficial interests of trusts, including contests over whether a trust exists.  See Boagni v. Commissioner, supra; Reed v. Commissioner, 55 T.C. 32 (1970); Stevens v. Commissioner, T.C. Memo. 1999-259; Barr v. Commissioner, T.C. Memo. 1989-420; Duntley v. Commissioner, T.C. Memo. 1987-579.  Settlement payments and legal fees expended to resolve disputes over ownership of assets may be capital expenses.  See Anchor Coupling Co. v. United States, supra; Wallace v. Commissioner, 56 T.C. 624 (1971).  Payments that settle challenges to ownership that are of questionable

merit may also be capital. See <u>Am. Stores Co. v. Commissioner</u>, 114 T.C. 458 (2000); <u>Duntley v. Commissioner</u>, <u>supra</u>.

A deduction is generally allowed for expenses incurred in defending a business and its policies from attack. <u>INDOPCO, Inc. v. Commissioner</u>, <u>supra</u> at 83; <u>Commissioner v. Tellier</u>, 383 U.S. 687 (1966); <u>Commissioner v. Heininger</u>, 320 U.S. 467 (1943).

## II. <u>Parties' Arguments</u>

Petitioner argues that the settlement payments are deductible under section 162(a) as ordinary and necessary expenses paid or incurred in carrying on its profit-seeking insurance business and are directly connected to its profit-seeking activities. Petitioner argues that the payments cannot be capitalized because the lawsuits did not challenge title of specific items of property. Respondent argues that petitioner may not deduct the settlement payments because they represent transfers of assets held in charitable trust.[11]

## III. <u>Analysis</u>

The record shows that none of the lawsuits in question was brought to enjoin or change AICI's business practices, as

---

[11]The State attorneys general sought to recover assets from petitioner that they claimed were never petitioner's assets. According to the State attorneys general, petitioner's subsidiaries held these assets in trust for a charitable purpose. Because the subsidiaries, like the parent company, were no longer operated for charitable purposes, the State attorneys general sought to recover these assets and return them to their charitable purpose. Respondent claims that the transfer of these assets from petitioner to their charitable purpose is a transfer of title.

petitioner argues. In each case, the origin of the claim was a dispute over the equitable ownership of assets allegedly impressed with charitable trust obligations. In each case, the settlement provided that the assets AICI relinquished were transferred to a section 501(c)(3) organization with the same charitable purpose that the attorneys general claimed the charitable trust assets benefitted.

The Kentucky litigation involved a title contest to alleged charitable assets. Relying upon its research into legislative and corporate history, the Kentucky Attorney General's office brought suit alleging that predecessors to the Anthem subsidiary in Kentucky held their assets in charitable trust for the benefit of public health in the State. The complaint, the settlement document, and the parties' own descriptions of the nature of the lawsuit convince us that the purpose of the Kentucky litigation was to determine title to the alleged charitable assets. The $45 million settlement directly responded to the Kentucky Attorney General's allegation that the assets held by petitioner were committed to a charitable purpose. The $45 million went to establishing a section 501(c)(3) organization that addresses healthcare needs. There is no evidence that the attorney general sought to change AICI's business practices, as petitioner alleges.

The Ohio Attorney General's office filed a complaint alleging that certain assets were impressed with a charitable trust and seeking the return of those assets to their original charitable purpose because BCBS-Ohio's merger with AICI frustrated that purpose. The claim alleged beneficial ownership in the public of the Blue Cross entity's assets because of the entity's relationship with charitable hospitals, the tax exemptions it received, and its own declarations that it was organized solely for social welfare purposes.

The Connecticut Attorney General also found a basis for a charitable trust claim because the BCBS entity was a non-profit low-cost healthcare provider devoted to public welfare. The complaint and the settlement focused on the ownership of trust assets. Again, petitioner's financial statements and annual reports characterized this lawsuit as a dispute over title to assets allegedly impressed with a charitable trust.

Petitioner denies the existence of a charitable trust obligation and asserts that it settled only to avoid interruption of business or loss of good will. We find this argument irrelevant to our analysis. A taxpayer's motive for settling is not controlling in determining whether a settlement payment is deductible. Woodward v. Commissioner, 397 U.S. at 578; Anchor Coupling Co. v. United States, 472 F.2d at 431.

Petitioner further argues that the attorneys general may have been confused about whether the Settlement Subsidiaries were section 501(c)(3) organizations or charities under Federal tax law. We decline to relitigate the underlying merits of each lawsuit, and our analysis of the origin of the claim does not demand it. As a result, because the attorneys general brought suit to recover equitable title to assets they believed were impressed with charitable trusts, the origins of the claims in all three lawsuits were disputes over title to assets.

Petitioner nevertheless contends that the origin of the lawsuits was a challenge to the manner in which petitioner's subsidiaries conducted their profit-seeking health insurance business. All the evidence suggests otherwise. No prayer for relief demanded a change in business behavior, and none of the testimony of the attorneys who worked on these cases for the Kentucky, Ohio, and Connecticut attorneys general suggested that they sought to change AICI's business practices or shut them down.

Petitioner also relies heavily on the theory that the settlement payments are per se deductible because they were necessary to defend its business. Petitioner relies primarily on two cases to argue that the settlement payments are per se deductible, BHA Enters., Inc. v. Commissioner, 74 T.C. 593 (1980) and A.E. Staley Manufacturing Co. & Subs. v. Commissioner, 119

F.3d 482 (7th Cir. 1997), revg. and remanding 105 T.C. 166 (1995). In BHA, the origin of the claim was grounded in the taxpayer's effort to keep the FCC from revoking its broadcasting licenses, without which the taxpayer could not do business. There is no evidence in the record, however, that the attorneys general sought to stop petitioner's business. Moreover, petitioner's business did not fail despite the attorneys general's success in removing many of these assets from petitioner's control. The uncorroborated and self-serving testimony of petitioner's witnesses that they could no longer do business if they lost these suits is unconvincing.

The facts in A.E. Staley are equally unavailing to petitioner. In that case, the Court of Appeals allowed deductions for certain investment banking and printing costs incurred by the taxpayer in an unsuccessful effort to defend its business against a takeover because the costs produced no future benefit. A.E. Staley Manufacturing Co. & Subs. v. Commissioner, supra at 489. Our case is factually distinguishable because the future benefits accruing from the defense and settlement of the cy-pres litigation are manifest, enabling petitioner in effect to convert the assets from charitable to income-producing purposes.

We need not address respondent's alternative theories because we hold that the settlement payments originated from

suits to resolve title to assets and therefore are not deductible.

IV. Character of Legal and Professional Expenses

We turn now to the question of whether the legal and professional expenses petitioner incurred in defending itself from the lawsuits are deductible. Legal and professional expenses, like settlement payments, are analyzed under the origin of the claim doctrine. Mosby v. Commissioner, 86 T.C. 190 (1986). Costs incurred in defending title to property are capital expenditures. Sec. 1.263(a)-2(c), Income Tax Regs. Moreover, legal expenses incurred in defending against claims challenging a taxpayer's ownership of assets may be capital expenditures. Duntley v. Commissioner, T.C. Memo. 1987-579. Petitioner's legal and professional fees arose from defending against claims that had their origin in equitable ownership of assets. Accordingly, these fees are capital expenditures.

V. Conclusion

Petitioner's settlement payments and litigation and professional fees are capital expenditures and not deductible under section 162(a).

In reaching our holdings, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

15

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.